18820.   ATLANTIC COAST LINE RAILROAD COMPANY
*et al. v.* GODARD, executrix.

ARGUED JANUARY 10, 1955—DECIDED FEBRUARY 16, 1955.

Kay Tipton, Weldon C. Boyd, for plaintiffs in error.

Randall Evans, Jr., contra.

HAWKINS, Justice. (After stating the foregoing facts.) ■ Under the ruling in Lillie v. Thompson, 332 U. S. 459 (68 Sup. Ct. 140, 92 L. ed. 73), and the principle stated in Yellow Cab Co. of Atlanta v. Carmichael, 33 Ga. App. 364 (126 S. E. 269), in 65 C. J. S. 700, § 111 (f), and in Restatement of the Law of Torts, § 302, Comment (n), the general demurrer to the petition was properly overruled. In the Lillie case, supra, the plaintiff alleged in substance: "Respondent required her [petitioner], a 22-year-old telegraph operator, to work alone between 11:30 p. m. and 7:30 a. m. in a one-room frame building situated in an isolated part of respondent's railroad yards in Memphis. Though respondent had reason to know the yards were frequented by dangerous characters, he failed to exercise reasonable care to light the building and its surroundings or to guard or patrol it in any way. Petitioner's duties were to receive and deliver messages to men operating trains in the yard. In order for the trainmen to get the messages it was necessary for them to come to the building at irregular intervals throughout the night, and it was petitioner's duty to admit them when they knocked. Because there were no windows in the building's single door or on the side of the building in which the door was located, petitioner could identify persons seeking entrance only by unlocking and opening the door. About 1:30 a. m. on the night of her injury petitioner responded to a knock, thinking that some of respondent's trainmen were seeking admission. She opened the door, and before she could close it a man entered and beat her with a large piece of iron, seriously and permanently injuring her." The allegation that the respondent had

reason to know that the yards were frequented by dangerous characters sufficed to charge the trustee with the duty to exercise ordinary care to guard against injury from dangerous characters. The general rule that the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence does not apply when it is alleged that the defendant had reason to anticipate the criminal act. The petition in this case, which alleged that the defendants well knew that dangerous, reckless, and lawless characters and persons who were strangers frequented the premises described during the nighttime, including prowlers and hoboes, was sufficient to charge the defendants with the duty to anticipate the criminal act alleged, and to exercise ordinary care to protect its employees therefrom. Lillie *v.* Thompson, supra. The general demurrer to the petition was, therefore, properly overruled.

■ Paragraph 20 of the petition alleges: "The specified negligence on the part of defendants which caused plaintiff's injuries, and which negligence was the proximate cause of said injuries, was as follows: . . . (b) In knowingly maintaining its depot in an isolated part of Madison, out of sight and hearing of officers of the law, without maintaining any guard or patrol of said premises." This allegation was specially demurred to upon the ground that "the same in and of itself does not constitute legal basis for recovery." As to these allegations, the special demurrer should have been sustained. There is no allegation in this subparagraph showing any duty on the defendants to maintain any guard or patrol of the premises maintained by them at the place therein described, and in and of itself this charge of negligence furnished no legal basis for recovery. It makes no reference whatever to allegations of the petition appearing elsewhere as to the defendants' knowledge that dangerous, reckless, and lawless characters and persons who are strangers frequent the premises during the nighttime, including prowlers and hoboes, which allegations were held, in the preceding division of this opinion to be necessary to charge the defendants with any duty to anticipate any criminal attack upon the plaintiff or to place any duty upon the defendants to exercise ordinary care to protect their employees therefrom. These are the allegations which saved the petition as against the general demurrer, and

without them the specification of negligence in subparagraph (b) of paragraph 20 was insufficient to show any basis for a recovery by the plaintiff.

The ruling here made is also controlling of the assignment of error contained in special ground 5 of the motion for new trial, which contends that the following charge of the court to the jury was error: "Now, in order to entitle the plaintiff to recover in this case under Count I on which he now sues he must prove by a preponderance of the evidence that the defendants were negligent in at least one of the particular acts of negligence set out in Count I of the petition, as amended, and that such negligence was the proximate cause or a contributing cause entering into the proximate cause of the alleged injuries and damages. It is not necessary that the plaintiff, that is, E. A. Baker, Sr., prove that the defendants were negligent in all of the particular acts set out in Count I of the petition." After reciting the foregoing specification of negligence (paragraph 20 b), movants assign error on the charge as follows: "(a) It amounted to an instruction by the court that the acts enumerated in the petition, as amended, would, if proven, constitute negligence. (b) It permitted the jury to find against movants on any one or more of the acts enumerated as negligence in the petition, as amended, when of the several acts so enumerated, the act of alleged negligence quoted above, without more, does not as a matter of law or fact constitute negligence, and therefore, does not constitute any legal basis for recovery."

Before the charge here excepted to was given, the trial judge had instructed the jury: "During the course of this charge I may use certain terms, such as plaintiff's negligence and defendants' negligence. I charge you that in using these terms I am not intimating, suggesting, or expressing any opinion whatsoever that either the plaintiff . . . or the defendants . . . were negligent in any respect, but such terms as used by me are of course subject to the qualification and condition that you find any such negligence on the part of the party to whom such term refers. Whether a party is or is not negligent and all other questions of fact are questions solely for your determination, and the court has no opinion concerning such questions."

Construing these two portions of the charge together, the ex-

cerpt excepted to is not subject to the criticisms contained in assignment (a). However, it was erroneous for the reasons pointed out in assignment (b). By this charge the court authorized the jury to find the defendants negligent in failing to guard or patrol their premises, although proof of failure to guard or patrol, without more, could not support a finding of negligence entitling the plaintiff to recover. The only thing charged as negligence in this particular specification was that the defendants maintained their depot at the place referred to without maintaining any guard or patrol of said premises. By the charge given the jury were authorized to find in favor of the plaintiff if he proved any one of the acts of negligence set out in the petition, and that such negligence was the proximate or contributing cause entering into the proximate cause of the alleged injuries and damages, thus authorizing a recovery by the plaintiff if he proved nothing else but that the defendants did not guard or patrol the station premises, without regard to the other allegations of the petition that the defendants knew that dangerous characters, hoboes, and prowlers frequented the premises, which latter allegations were necessary to place any duty on the defendants to anticipate such an occurrence as that here involved, and the exercise of ordinary care to avoid injury to its employees. See, in this connection, *Central of Georgia Ry. Co.* v. *Keating*, 177 *Ga.* 345 (4 a, b) (170 S. E. 493).

■ With the exception above noted, the special demurrers were properly overruled.

■ In special ground 1 of the motion for new trial, error is assigned upon the admission of the following testimony of Mrs. E. A. Baker, Sr.: "From the time he was attacked until he died, from my knowledge of him, he never recovered from that attack; he never was well any more. In my opinion that was from the results of the attack. . . He was not able to work during that time because the beating had gotten him down and he was not well enough to work any more." In special ground 2 of the motion, complaint is made of the admission in evidence of E. A. Baker, Jr.'s testimony, "In my opinion his going down was due to the attack." The only objection shown to have been made to the evidence of these witnesses was that their testimony was a conclusion. "The conclusion of a non-expert witness, or

his opinion, is admissible when predicated upon facts stated by the witness." *Dean* v. *Littleton,* 161 *Ga.* 651 (1) (131 S. E. 507); Code § 38-1708. The objection made failed to assert that no foundation had been laid for the conclusions of the witnesses, nor was it urged that the foundation was insufficient. Therefore, it was not error to admit the evidence complained of over the objection made. *Humphreys* v. *State,* 35 *Ga. App.* 386 (133 S. E. 518); *Townsend* v. *Hames,* 40 *Ga. App.* 834 (2) (151 S. E. 665).

■ The exception in special ground 3 to the admission of evidence which the court admitted "for the present time" is without merit, where the objecting party made no subsequent motion to have the evidence ruled out. *Mullis* v. *State,* 197 *Ga.* 550 (2) (30 S. E. 2d 99), and cases cited.

■ The court did not err, as contended in special ground 4, in refusing to allow a witness to testify as follows: "Mr. Baker bid on this job when he first came to it several years ago. Mr. Baker bid on this job originally as clerk." Without going into other reasons why the evidence was inadmissible, it appeared that the bid was in writing and there was no accounting for the highest and best evidence of the fact sought to be proved.

■ In special ground 6, the defendants complain of a charge to the effect that the plaintiff might recover for the aggravation of any dormant physical ailment or disease by the injury he sustained; and it is said that there was no evidence on which the jury might base such a finding.

The defendants' witness, Dr. J. H. Nicholson, who had treated the deceased from March, 1952, until his death on August 14, 1952, testified that he discovered a cancer of the colon when he operated on Baker in March, 1952, which had probably existed for a year previous to the operation; that it would probably be caused by some irritation; that, if Baker was hit right on top of the cancer, that would probably hurt it; and that a blow on the side of the body, near the belt would affect it. Baker's wife testified that she saw her husband shortly after he was beaten; "I saw bruises on him, two places on his head and on his face and one on his back and shoulder. To point out on your back, one place was along here and one was up a little bit further." This evidence was sufficient to raise an issue as to whether the

blows sustained by Baker aggravated a physical ailment then existing, and the charge complained of was authorized by the evidence.

■ In special ground 7, it is contended that the following charge submitted to the jury an issue as to which there was no evidence: "An item of damages recoverable on account of injury to the person where there is liability is the reasonable value of such [lost] earnings, if any, due to such injury." The court previously stated that the plaintiff sought to recover lost earnings accruing between July 23, 1951, and August 14, 1952. The movants contend that there was no evidence establishing the time within which Baker could have worked had it not been for the injury complained of; that there was no showing of when his disability resulting from the injury had diminished to the point where he was first able to work, nor when such disability had ended, nor when the disability resulting from cancer began. There was evidence that Baker returned to work on November 26, 1951, and worked until February 29, 1952, but did not work on February 19 and 20. The defendants' agent, Cooper, testified that Baker had called him on Monday following the last day he worked to say that he was not able to come to work. He further testified: "After Mr. Baker was injured on the night of July 23, 1951, he came back to work later on;  . . .  his right hand was drawn to a certain extent. It had not been drawn before the injury. I would say he could not telegraph as well after the injury as before. That was a part of his job, telegraphing. A telegrapher uses his right hand. To a certain extent a part of his ability to work was taken away in the hand." Baker's wife testified that he was not able to sign checks after he was injured, and that, after sustaining his injuries, he only attempted to work, as he was not well enough to work any more. There was evidence of the deceased's usual hours and of his rate of pay per hour. As indicated in the previous division, there was evidence tending to show that his injuries had aggravated his condition of cancer. The evidence authorized the jury to find that when Baker did not work it was because he was unable to work as a result of his injuries, during the period after he was injured until he died.

■ It was also error to overrule the general grounds of the

motion for new trial. In division 1 of the opinion, it is pointed out that the allegations of the petition that the defendants well knew that dangerous, reckless, and lawless characters and persons who were strangers frequented the premises described during the nighttime, including prowlers and hoboes, were essential to the statement of a cause of action. The only evidence offered by the plaintiff to support these allegations was the testimony of the defendants' agent Cooper, as follows: "There has been no previous attempted robbery or burglary since I have been there. I don't know whether any lawless persons frequent that particular depot in the nighttime and up and down the railroad track. I can't say about hoboes riding the trains at night; I have seen them on trains in the daytime. I would not think there was any reason why they would not be there at night. I don't see any hoboes riding trains this day and time. I have not seen many hoboes since the depression. I don't believe I have seen any within the last year or two." There is no evidence that any such persons ever alighted from the defendants' train on the premises described, or that they ever frequented the premises described. The evidence is, therefore, wholly insufficient to support these essential allegations of the petition, and the verdict in favor of the plaintiff is without evidence to support it.

10. Since a new trial must be had because of the errors pointed out in divisions 2 and 9 of this opinion, it becomes unnecessary to pass upon the ground of the motion complaining that the verdict in favor of the plaintiff is excessive.

*Judgment reversed. All the Justices concur, except Head, J., who dissents, and Wyatt, P. J., who dissents from the rulings in divisions 2 and 9 of the opinion and from the judgment of reversal.*