## A91A0876. LANCE et al. v. ELLIOTT et al.
(413 SE2d 486)

ANDREWS, Judge.

Lance sued Dr. Elliott and his employer, Atlanta Gastroenterol-

---

ogy Association, P. C. (AGA), as well as the manufacturer and distributors of the gastric bubble, for medical malpractice, breach of express and implied warranties, and product liability. Her husband sued for loss of consortium. She appeals the granting of summary judgment to Dr. Elliott and AGA.

Construing the evidence in favor of the Lances, the nonmoving parties, as required in ruling on a motion for summary judgment, *Eiberger v. West*, 247 Ga. 767 (281 SE2d 148) (1981), it showed that Ms. Lance, who had been chronically and severely obese for many years, received information on the availability and use of the gastric bubble in a hospital newsletter featuring AGA. The bubble was used in conjunction with a diet and behavior modification program to lose weight. Before inflation, the bubble was inserted into the stomach by means of an endoscope. The bubble was then inflated and floated in the upper part of the stomach, giving the sensation of fullness and decreasing appetite.

Ms. Lance's medical history revealed a hysterectomy and abdominal wall hernias. The need to undergo surgery for repair of a hernia was one reason for her desire to lose weight. She made an appointment with Dr. Elliott and she and her daughter discussed the bubble with him. She was advised and understood that there was a possibility of the bubble deflating and traveling through the intestine where it could cause a blockage that might have to be surgically resolved. She was also given written information about the bubble.

On April 7, 1987, Dr. Elliott performed an endoscopic examination of her stomach to ensure there was no ulcer activity or a hiatal hernia, i.e., a tear in the diaphragm through which the stomach and bubble could protrude. He found none and the insertion was performed. Ms. Lance was seen weekly by a nutrition counselor at AGA and lost over 40 pounds in a month.

On May 27, Ms. Lance felt what she described as an "edge" in her hernia, which she believed was the deflated bubble. It was painful and the next morning she called Dr. Elliott's office and the receptionist made an x-ray appointment for her at the hospital. Although she waited at Dr. Elliott's office for several hours that afternoon, she did not see him because he was in surgery and she was not able to determine the results of the x-ray. The next day she called and was told the x-ray showed the bubble in place. Dr. Elliott examined the x-ray and had his nurse contact the radiologist who opined that the bubble was still inflated and in place. Because the bubble bore no opaque markings, the only way to determine its location without using a dye process was by location of an air bubble in its approximate shape. The radiologist's written report stated there was a rectangular shaped air pocket seen, which "may represent the gastric bubble. If so, it appears to extend above the diaphragm and therefore is most likely

within a hiatal hernia partially."

On June 1, Ms. Lance again called Dr. Elliott's office and asked to speak to him, telling them she was in severe pain. She was informed she could not speak with him then and was asked if it were an emergency. She informed them that in her mind it was and she was in pain. The first available appointment was June 12 and she was scheduled for then. She returned to see her nutritionist at AGA the following Wednesday and asked her if she could examine the x-ray. The nutritionist declined because she was unqualified to do so.

On June 5 she contacted her regular physician, Dr. Evans (who had treated her hernias in the past), because her hernia area was becoming red and irritated. She was given antibiotics for an infection. She did not advise him of the presence of the bubble. The following Sunday, she experienced excruciating pain in the hernia area which dissipated after an hour. She continued to see Dr. Evans and the infection appeared to clear up.

Upon returning to see the nutritionist at AGA prior to June 12, one of the nurses suggested an examination, but because the pain had cleared, Ms. Lance said that was unnecessary. The appointment on June 12 was also cancelled because Ms. Lance believed the hernia problem had cleared up.

On Friday June 12, irritation and pain appeared in an adjacent area and she began running a fever. She saw Dr. Evans on Monday and was told to contact a surgeon if it did not improve. She was sent to the emergency room by the surgeon the next day and admitted. The surgeon was told the bubble was still in place. Later, Ms. Lance was getting out of bed when the hernia ruptured. When the doctor arrived, he extracted the deflated gastric bubble from the hernia.

Dr. Elliott and AGA moved for summary judgment on the grounds that the foreign object statute of limitation, OCGA § 9-3-72, applied and had not been complied with; the treatment met the required standard of care; and that Ms. Lance had assumed the risk of the deflation and migration of the bubble.

In support of the motion, Dr. Elliott submitted his own affidavit, stating that the treatment rendered met that degree of skill and care exercised by physicians generally under like conditions and similar surrounding circumstances and that his care had caused her no harm. The affidavit also stated that use of the bubble was not indicated in patients with hiatal hernias and at the time of insertion she did not have one.

In opposition to summary judgment, plaintiffs filed on July 3, 1990 the unsigned affidavit of Dr. Markowitz. This copy included attached exhibits, including portions of the medical records relied upon by Dr. Markowitz. On July 13, as consented to by defendants, plaintiffs filed a signed copy of the affidavit. The exhibits, however, were

not appended to the signed copy. On August 30, 1990, a certificate of authenticity of medical records was filed with regard to the Emory Clinic, but the records being authenticated were not otherwise identified, making the certificate useless.

Defendants argued that the affidavit was insufficient to carry the plaintiffs' burden on summary judgment on the ground that the records used as exhibits were not sworn or certified and the affidavit's conclusions were unsupported.

In ruling on the motion, the court concluded that Dr. Markowitz' affidavit was not sufficient to create a dispute of fact as to medical malpractice, because the medical record exhibits were uncertified and unauthenticated and were filed with the unsigned copy of the affidavit. The court further ruled that, even considering Dr. Markowitz' opinion, based on his consideration of the depositions of Dr. Elliott and Ms. Lance which were filed of record,[1] the affidavit failed to adequately set out the standard of care and how Dr. Elliott's and AGA's conduct failed to comport with that standard.

The portions of medical records attached to the unsigned affidavit had no certification with them and the medical records are not otherwise included in the record. While an expert witness can base opinions on medical records reviewed by him or her, "OCGA § 9-11-56 (e) requires that sworn or certified copies of such material be attached to the affidavit. If such medical records are not part of the record in the case, they would have no probative value. *Crawford v. Phillips*, 173 Ga. App. 517 (1) (326 SE2d 593) (1985)." *Hall v. Okehi*, 194 Ga. App. 721, 722 (1) (391 SE2d 787) (1990).

Dr. Markowitz had not examined Ms. Lance and his opinion was based solely on the medical records and depositions which he had reviewed. "[T]he admissibility of evidence on motion for summary judgment, whether contained in affidavits or otherwise, is subject to the rules relating to the admissibility of evidence generally, so that evidence inadmissible on a hearing of the case would generally be inadmissible on motion for summary judgment. [Cit.]" *Thomasson v. Trust Co. Bank*, 149 Ga. App. 556, 557 (254 SE2d 881) (1979). Since the records were not attached to the affidavit or otherwise identified by their location in the evidence admitted of record, the references to these records cannot be used to contest the summary judgment motion. *Hall*, supra; *Hughey v. Emory Univ.*, 168 Ga. App. 239, 240 (308 SE2d 558) (1983); see *Val Preda Motors v. Nat. Uniform Svc.*, 195 Ga. App. 443, 444 (2) (393 SE2d 728) (1990). In addition, the medical records, even if properly admitted, contained the opinions of other

---

[1] Although the deposition of Ms. Childress, Ms. Lance's daughter, is relied upon by Dr. Markowitz' affidavit and referred to in the court's order, that affidavit is not on file below. See *Green v. Sun Trust Banks*, 197 Ga. App. 804 (1) (399 SE2d 712) (1990).

physicians who did not testify by deposition or affidavit on the motion. A physician may not base an opinion on the hearsay opinion of another doctor. *Doctors Hosp. v. Bonner*, 195 Ga. App. 152, 159 (5) (392 SE2d 897) (1990). Therefore, the court correctly did not consider the opinion of Dr. Markowitz based upon the portions of uncertified medical records. *Taquechel v. Chattahoochee Bank*, 260 Ga. 755, 756 (2) (400 SE2d 8) (1991).

Absent those records, the depositions of Dr. Elliott and Ms. Lance do not provide sufficient support for the conclusions drawn by Dr. Markowitz, particularly with regard to the professional standard of care and how the acts of Dr. Elliott and AGA varied therefrom. *Hillhaven Rehab. &c. Center v. Patterson*, 195 Ga. App. 70, 71 (1) (392 SE2d 557) (1990). The affidavit failed to meet the threshold requirement for recovery for medical malpractice.

The order granting summary judgment does include references to "incarceration of the bowel" as an explanation of the problems suffered by Ms. Lance, which are not supported by the record. This, however, does not negate the court's conclusions with regard to the insufficiency of the affidavit.

Therefore, the court's grant of summary judgment on the medical malpractice claim was appropriate.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 15, 1991 —
RECONSIDERATION DENIED DECEMBER 4, 1991.

*Joseph J. Saia*, for appellants.

*Alston & Bird, Robert D. McCallum, Jr., Robert P. Riordan, Nancy Glenn, Swift, Currie, McGhee & Hiers, James B. Hiers, Jr.,* for appellees.

