## S95G0807. SUN TRUST BANKS, INC. v. KILLEBREW.
### (464 SE2d 207)

BENHAM, Chief Justice.

In this case, which stems from the grant of certiorari to the Court of Appeals, we address whether a prior crime that was unreported and unknown to a property owner, but was reported to the police, was sufficient to give the property owner knowledge of a risk of criminal activity on its property so as to require it to take reasonable precautions to protect customers from similar risks. See *Killebrew v. Sun Trust Banks*, 216 Ga. App. 159, 160-161 (1) (453 SE2d 752) (1995). We conclude that knowledge of the risk of criminal activity is not created under the circumstances of this case, because the evidence in this case did not establish the existence of any duty on the property owner's part to search police records for reports of criminal activity on its premises.

Appellee Stephen Killebrew was shot by a robber in Sun Trust Bank's parking lot after using an automated teller machine ("ATM") at night. Killebrew sued Sun Trust, alleging it failed to exercise ordinary care to keep its premises safe in light of a prior substantially similar criminal incident. Five months before the present incident, another customer using the same ATM at night was attacked in the parking lot by an assailant who threatened to hit the customer with a half-gallon liquor bottle. That incident was reported to the police but not to the bank. The bank's security chief testified on deposition that it was the security department's duty to investigate all crimes occurring on bank property.

The trial court's grant of summary judgment to Sun Trust was reversed on appeal. The Court of Appeals acknowledged that a property owner may not be liable for the criminal act of a third party unless it has reasonable grounds for expecting that such a criminal act would occur. The Court of Appeals also recognized that Sun Trust did not have actual knowledge of the prior crime, but citing *Savannah College of Art &c. v. Roe*, 261 Ga. 764 (2) (409 SE2d 848) (1991), determined that the existence of a police report of the prior crime and the security chief's testimony created an issue of fact concerning the bank's constructive knowledge.

Assuming arguendo that constructive knowledge of a prior substantially similar criminal incident may be sufficient to impose on a property owner the duty to take reasonable precautions to protect visitors from a similar risk, the evidence in this case did not establish such knowledge. There is no authority in this State imposing a duty upon a property owner to investigate police files to determine whether criminal activities have occurred on its premises, and the testimony by the bank's security chief did not establish that its duty to investigate crimes on its property encompassed seeking out police reports of

incidents not reported to the bank. Thus, under these circumstances, the evidence did not create a genuine issue of material fact regarding whether appellant had reasonable grounds for expecting that such a criminal act would occur. The Court of Appeals erred in reversing the trial court's grant of summary judgment on this ground.

*Judgment reversed. All the Justices concur.*

SEARS, Justice, concurring.

I agree with the analysis in the majority opinion and concur in its judgment. I write separately to set forth my views on two issues that exceed the question raised by this Court's grant of certiorari, but which are nevertheless raised by the parties and will be relevant to the Court of Appeals' decision on remand from this Court. The first question is whether, absent evidence of prior criminal activity,[1] Sun Trust could have reasonably anticipated criminal activity at one of its automatic teller machines (hereinafter "ATMs" or "ATM"). Given the unique opportunity for criminal activity presented by ATMs, along with evidence of several dangerous aspects of the ATM involved in this case, I would answer this question affirmatively. The second question is whether a bank's liability for a robbery at an ATM can be predicated upon the false impression of security conveyed to a bank customer by the visible presence of a security guard who, unknown to the customer, has been instructed by the bank not to provide security but only to stop non-customers of the bank from using the parking lot. I would also answer this question affirmatively.

1. As for whether Sun Trust knew or should have known of an unreasonable risk of criminal activity even absent evidence of a prior crime, neither this Court nor the Court of Appeals has specifically held that knowledge of an unreasonable risk of criminal activity can only be created by the prior, actual occurrence of a crime. Instead, both this Court and the Court of Appeals have stated that knowledge of the unreasonable risk of criminal activity *"may"* be proven by prior similar incidents.[2] Further, in *Lau's Corp. v. Haskins*,[3] this Court relied on evidence other than prior similar incidents in determining that a proprietor had a duty to protect its invitees. More specifically, we held that evidence that the owner knew the business was located in a high crime area, coupled with evidence that the owner knew of a prior purse snatching on the premises, gave rise to an issue of fact regarding whether the property owner had a duty to protect its pa-

---

[1] Because of the holding of the majority opinion today, there is at this time no evidence in the record of prior criminal activity.

[2] *Savannah College of Art &c.*, 261 Ga. 764, 765 (409 SE2d 848) (1991); *Ritz Carlton Hotel Co. v. Revel*, 216 Ga. App. 300, 302 (454 SE2d 183) (1995).

[3] 261 Ga. 491, 492-493 (405 SE2d 474) (1991).

trons from the risk of violent criminal activity.

The thrust of these cases is that if a proprietor "has reason to anticipate a criminal act, he or she then has a 'duty to exercise ordinary care to guard against injury from dangerous characters.' "[4] Moreover, a proprietor's duty to protect against criminal activity is not dependent upon the foreseeability of the particular crime in question but upon the foreseeability of the general risk of criminal activity.[5] Further, the "question of reasonable foreseeability" of criminal conduct generally is "for a jury's determination rather than summary adjudication by the courts."[6] Although evidence of prior similar incidents may be some of the strongest and most readily available proof that a proprietor has reason to anticipate a criminal act, it should not be required if other circumstances clearly demonstrate that a proprietor had reason to anticipate a criminal act. Stated differently, foreseeability should not depend upon the fortuity of a prior crime when the potential for criminal activity is apparent to everyone. Requiring a prior similar incident in such cases would lead to arbitrary results, and would engage the courts in the mechanistic, unreasoned application of rules, requiring us to turn a blind eye to the simple reality that some business owners may reasonably anticipate criminal activity even if no prior crimes have occurred. In the present case, I would conclude that a jury question remains regarding whether Sun Trust reasonably could have anticipated that a robbery could have occurred.

First, as studies by the banking industry and others have shown, ATMs have proved to be a reliable source of funds not only for bank customers, but also for criminals.[7] Thus, the banking industry itself anticipates that criminal activity will frequently occur at ATMs. Consistent with that anticipation, the record demonstrates that Sun Trust anticipated criminal activity might occur at its ATMs. In this regard, Sun Trust's security chief testified that Sun Trust has undertaken safety measures to protect customers from being robbed at its ATMs, including surveillance cameras, lighting, landscaping, and the adding of fences where necessary. Moreover, that such criminal activity has occurred and is reasonably foreseeable is hardly surprising. Unlike many other premises liability robbery cases, where a criminal cannot be certain whether a person is carrying a significant amount of money, a customer withdrawing money from a banking machine guarantees a source of cash that most criminals would consider significant.

[4] *Days Inns of America v. Matt*, 265 Ga. 235, 236 (454 SE2d 507) (1995).
[5] See *Warner v. Arnold*, 133 Ga. App. 174, 177 (210 SE2d 350) (1974).
[6] *Lay v. Munford*, 235 Ga. 340, 341 (219 SE2d 416) (1975).
[7] Note, Institutional Liability for Attacks on ATM Patrons, 1994 U. Ill. L. Rev. 1009, 1012; 4 AmJur 497, Proof of Facts, Liability of Bank for Criminal Attack at ATM or Night Depository (1989); Bank Admin. Inst. Task Force on ATM Crime, ATM Security Handbook 40 (2d ed. 1988).

That the withdrawal is frequently made outdoors, at night, and by a lone person is a virtual invitation to and special opportunity for the criminal element. Finally, Killebrew testified that the ATM at which he was shot was located on the side of the bank and was not well lit, factors that would facilitate criminal activity at this ATM. The foregoing factors, taken as a whole, create a factual issue regarding whether Sun Trust could have anticipated criminal activity at the ATM in question.

Moreover, although the foreseeability of a criminal act is necessary to give rise to a duty to protect against it,[8] other tort policies, as well as vital concepts of efficiency and equity, dictate that banks be allocated some of the risk in ATM cases. After all, banks have aggressively marketed and promoted the use of ATMs because they permit banks to provide services at a fraction of the cost of traditional banking methods and to obtain a larger overall share of the banking market.[9] Imposing a burden on banks to provide reasonable protection to ATM customers is thus fair and equitable. Further, banks are in a better position to monitor crime at ATMs and to determine and implement the most effective methods of combating it.[10] Moreover, concerns about potential liability are largely unwarranted. Many of the methods for protecting ATM customers are simple and already in place. They include increased lighting and surveillance, placing ATMs in the front of banks, informing customers regarding self-protection, and providing secured enclosures.[11] In fact, in Georgia, increased lighting and customer education are now mandated by law.[12] Finally, a holding that an operator of an ATM has a duty to provide reasonable protection to its customers is not a holding that a bank is an insurer of its customers. After establishing a duty, an injured customer must still prove that the bank breached that duty and that that breach was the proximate cause of the customer's injuries.[13]

For the foregoing reasons, I would conclude that, even absent evidence of a prior crime, a jury issue remains regarding whether Sun Trust could have reasonably anticipated that a robbery could have occurred at its ATM. A contrary holding would "create the equivalent of a 'one free bite rule' for premises liability" cases,[14] and would amount to nothing more than protection of proprietors out of an unspoken fear that juries will award damages even if unwarranted by the evidence. I harbor no such doubt in our juries, but instead have

---

[8] *Days Inns of America*, 265 Ga. at 236.
[9] 1994 U. Ill. L. Rev. at 1011-1012 and 1028-1029.
[10] Id. at 1025-1026.
[11] Id. at 1029-1030.
[12] OCGA §§ 7-8-1 to 7-8-8.
[13] See *Lau's Corp.*, 261 Ga. at 493-494; *Days Inns of America*, 265 Ga. at 236, n. 1.
[14] *Wallace v. Boys Club of Albany*, 211 Ga. App. 534, 536, n. 2 (439 SE2d 746) (1993).

the utmost faith in their ability to discern the genuine claim from the spurious. Further, although this Court has numerous precedents relying on evidence of prior crimes, one of the great virtues of judicially created rules is that in cases in which they have no validity and are inconsistent with the reality of contemporary society, the courts can act quickly to reexamine and modify them so as to ensure that they are not instruments of injustice.

2. Further, I would hold that a jury issue remains regarding whether a security guard placed at the bank by Sun Trust amounted to a misrepresentation of security upon which Killebrew relied to his detriment. The Restatement, Second, Torts, provides that

> (1) [o]ne who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
>
> (a) to the other . . . .[15]

According to Killebrew, on the evening he was shot, he entered the bank parking lot from a rear entrance and noticed a security guard sitting in a van parked at the back of the parking lot, at some distance from the ATM machine. Killebrew testified that he had seen the security guard on other visits to the ATM, had known the guard was a security officer by his uniform, and had assumed that the security guard was there to provide security for customers. Contrary to Killebrew's expectation, the evidence shows that the guard was employed only to keep non-customers from parking in the lot, and was instructed that protecting customers was not part of his job.

Clearly, conduct, as well as words, may convey information. The visible presence of a security guard at a bank at night could reasonably convey the message that the guard is there to provide protection to customers. Significantly, in this case the security guard was not engaged in activities that might have signaled a customer that he was not there to provide protection. Further, placing a security guard where he can be seen by customers and instructing the guard not to provide protection to those customers could be, depending upon the evidence, akin to posting a high-visibility sign advertising that protection would be provided to customers using the ATM at night, when in fact the bank had no security whatsoever. That such conduct, if proven, amounts to negligence would seem to be beyond reasonable dispute.

Based on the evidence in the record before us, I would conclude

---

[15] Section 311.

that the presence of the guard creates jury issues regarding whether Sun Trust negligently conveyed false information regarding security, whether Killebrew reasonably relied upon such information, and whether such information was the proximate cause of the physical harm to Killebrew. Finally, I note that cases involving false impressions of security are fact specific and that a holding that the facts of this case create a jury issue would not open the floodgates to jury trials on such claims in the future.

I am authorized to state that Justice Hunstein joins in this concurrence.

CARLEY, Justice, concurring.

I fully concur in the majority's reversal of the Court of Appeals holding that the evidence in this case "[was] sufficient to create a question of fact regarding whether the bank knew or should have known of the unreasonable risk." *Killebrew v. Sun Trust Banks*, 216 Ga. App. 159, 161 (453 SE2d 752) (1995). I believe that the Court of Appeals incorrectly found the existence of a genuine issue of material fact in this case because of its misconstruction of the holding of this Court in *Savannah College of Art &c. v. Roe*, 261 Ga. 764 (2) (409 SE2d 848) (1991). The Court of Appeals correctly relied upon *Savannah College of Art &c.* for the premise that, in cases of injury by a third-party criminal act, the proprietor does not have a duty, the breach of which is actionable under OCGA § 51-3-1, *unless* the proprietor had knowledge of an unreasonable risk of criminal attack. *Savannah College of Art &c.*, supra, 765. In that case, this Court applied the well-established principle that the existence vel non of any duty upon the proprietor is dependent upon evidence that the proprietor "knew or should have known" that there was an unreasonable risk of criminal attack. *Savannah College of Art &c.*, supra, 766. The knowledge of the unreasonable risk of criminal attack may indeed be "demonstrated by evidence of the occurrence of prior substantially similar incidents." *Savannah College of Art &c.*, supra, 765. See also *McCoy v. Gay*, 165 Ga. App. 590 (302 SE2d 130) (1983). However, the Court of Appeals erred in equating the proprietor's knowledge of the unreasonable risk, which may be either actual or constructive, with the proof of that knowledge by showing the proprietor's knowledge of the occurrence of previous substantially similar criminal incidents. If there is evidence of the occurrence of substantially similar prior criminal attacks *and* of the knowledge of the proprietor thereof, then there is a jury question as to whether or not the proprietor had sufficient actual or constructive knowledge of an unreasonable risk of criminal attack so as to have the duty to exercise ordinary care to prevent a subsequent similar criminal attack. Thus, I submit that knowledge of any prior similar incidents must be actual, but if there

is such actual knowledge, the proprietor still will not be liable unless, because of that knowledge, (1) he had actual or constructive knowledge of an unreasonable risk of criminal attack so as to impose upon him the duty to exercise ordinary care to prevent future attacks, and (2) the evidence shows a breach of that duty.

I am authorized to state that Justice Sears joins in this opinion.

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995.

*Webb, Carlock, Copeland, Semler & Stair, Philip P. Taylor, Fred M. Valz III,* for appellant.
*Robert C. Koski,* for appellee.