A99A1898. JOHNSON v. ATLANTA HOUSING AUTHORITY.
(532 SE2d 701)

POPE, Presiding Judge.

Willie Cleve Johnson sued the Atlanta Housing Authority after he was shot while sitting on a bench outside the AHA apartment building in which he lived. Johnson alleged that AHA failed to pro-

---

[13] *Lau's Corp.*, supra, 261 Ga. at 491.
[14] See id.

vide reasonable means of safety and security to protect its tenants from third-party criminal acts. The trial court granted summary judgment to AHA, and Johnson appeals. We affirm.

Construed in the light most favorable to Johnson, the record shows that Johnson was shot at approximately 10:30 p.m. as he sat on a bench in front of Roosevelt House, an AHA apartment building located on Techwood Drive in Atlanta, where he lived. The bench was adjacent to a bus stop on Techwood Drive and had been installed so that apartment residents would have a place to sit while waiting for the bus. Johnson was on his way out to buy cigarettes when he stopped to talk with Anthony Pitts, another Roosevelt House resident. Johnson said they had been talking for about ten minutes before he was shot. Earlier, they had noticed a man walking past them. The first time the man passed them, Pitts noticed he was dripping with sweat even though it was a cool night, and he mentioned something to Johnson about it. Johnson testified that he did not remember whether Pitts had said anything or not. He said he saw the man but that he did not pay much attention to him. The man turned around and passed them again on his way up to the street corner. Neither Johnson nor Pitts paid any further attention to him until Pitts saw the man coming toward them with a gun in his hand. Pitts told Johnson that the man had a gun, and Pitts got up and ran to the door. Johnson stayed on the bench, and the man walked up to him. Johnson says the man asked him if he knew a particular person who lived in the building. When Johnson said "no," the man called him a liar and shot him.

A landlord's duty to its tenants arises under OCGA § 51-1-3, and in Georgia that duty extends to protecting tenants from third-party criminal acts under certain circumstances:

> The general rule is that a landlord is not an insurer of his tenant's safety; however, the landlord does have a duty to exercise ordinary care to prevent foreseeable third-party criminal attack upon tenants. A tenant will be precluded from recovery, however, as a matter of law against the landlord when he or she has equal or superior knowledge of the risk and fails to exercise ordinary care for his or her own safety.

(Citations omitted.) *Jackson v. Post Properties*, 236 Ga. App. 701-702 (513 SE2d 259) (1999). A landlord's duty to guard against crime generally arises when "the landlord has reason to anticipate a criminal act from prior experience with substantially similar types of crimes." (Citations and punctuation omitted.) *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880, 882 (1) (524 SE2d 524) (1999). Georgia law does not

require that the prior crimes be identical in nature, but only that the incidents be sufficient to put the landlord on notice of a dangerous condition. *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997). And in determining whether prior incidents are similar, courts must look to various factors:

> In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. [Cits.]

*Id.*

1. In this case there was no evidence of any crime in the specific area immediately surrounding the bench where Johnson was shot. But Johnson's expert testified that he reviewed sixty-four police reports, which he said reflected crimes in and around Roosevelt House in the two years prior to Johnson's shooting. Johnson produced no evidence, however, that AHA was aware of any of the incidents reflected in the reports, and the law in Georgia is that a property owner has no duty to investigate police files to determine whether criminal activities have occurred on its premises. *SunTrust Banks v. Killebrew*, 266 Ga. 109 (464 SE2d 207) (1995).

Nevertheless, Johnson argues that AHA should be charged with knowledge of at least five of those reports because they reflect assaults on AHA security guards. Those reports reflect incidents where, under various circumstances, either tenants or nonresidents attacked security guards working at Roosevelt House or in the vicinity. None of these assaults involved either a gun or serious injury. Although Johnson provided no direct evidence that AHA received notice of these incidents, under Georgia law notice to the agent is notice to the principal. OCGA § 10-6-58. Therefore, AHA must be charged with knowledge of the incidents involving its own security guards. *Millan v. Residence Inn &c.*, 226 Ga. App. 826, 827 (487 SE2d 431) (1997).

In addition to the reports, there was evidence that in the months before Johnson was shot, AHA had increased surveillance of the building's parking lots because AHA had received reports about a number of car break-ins. And it was generally known that Roosevelt House was in a high crime area. While these factors standing alone may be insufficient to put AHA on notice of a dangerous condition, when combined with the incidents involving AHA security guards, they are sufficient to raise a jury question as to whether AHA was on notice of a dangerous condition. Compare *Lau's Corp. v. Haskins*, 261

Ga. 491, 492-493 (1) (405 SE2d 474) (1991), and *Woodall v. River-mont Apts. L.P.*, 239 Ga. App. 36, 40 (1) (520 SE2d 741) (1999), with *Doe v. Prudential-Bache/A. G. Spanos Realty &c.*, 268 Ga. 604, 606 (492 SE2d 865) (1997), and *Carlock v. Kmart Corp.*, 227 Ga. App. 356, 358 (1) (489 SE2d 99) (1997).

2. Even assuming that AHA should have foreseen the danger, however, Johnson admitted that he also knew of the danger. He had lived in Roosevelt House for three years prior to the shooting. He testified, "I don't hang around too much at night in my neighborhood. It's not kosher." He explained that there were "dope peddlers, prostitutes and all kinds of people up and down that block." He also indicated that he was "used to that environment [on Techwood], guns and whatever." He admitted that he had heard of shootings on the block on Techwood and that he considered it dangerous to sit out on the bench in front of Roosevelt House after dark. And although Johnson often sat out there during the day, he said he normally did not sit out there at night — just that one time on the night he was shot. In summary, Johnson was aware that it was dangerous to sit on the bench at night and that prior shootings had occurred on the block. Therefore, his knowledge of the danger was at least equal to that of AHA. See *Whitmore v. First Fed. Sav. Bank &c.*, 225 Ga. App. 768, 770-771 (484 SE2d 708) (1997).

3. The question then becomes whether Johnson exercised ordinary care for his safety. A landlord is not liable for a plaintiff's injuries caused by a dangerous condition if the plaintiff had equal or superior knowledge of the danger and failed to exercise ordinary care to avoid the danger. *Reid v. Augusta-Richmond County Coliseum Auth.*, 203 Ga. App. 235, 239 (416 SE2d 776) (1992). "Although the issue of a plaintiff's exercise of due diligence for his own safety is ordinarily a question for the jury, it may be summarily adjudicated where the plaintiff's knowledge of the risk is clear and palpable. [Cit.]" *Rappenecker v. L.S.E., Inc.*, 236 Ga. App. 86, 87 (1) (510 SE2d 871) (1999).

Here, Johnson was clearly aware of the dangers of lingering after dark on a bench adjacent to Techwood Drive. He was aware that "all kinds of people" came up and down that block. Yet while he stayed for ten minutes talking in an area he knew to be dangerous and that he generally avoided after dark, he admits he failed to pay attention. Although Johnson saw the man pass, and Pitts remarked upon the man's unusual appearance, Johnson failed to pay attention to the man because he was talking to Pitts. Thus, Johnson admits he was focusing on his conversation and not his surroundings. During the time the men were talking, the man passed them two times and then came back with a gun. We find that Johnson failed to exercise ordinary care under the circumstances and that the trial court properly

granted summary judgment to AHA. See *Rappenecker v. L.S.E., Inc.*, 236 Ga. App. at 88 (1); *Reid v. Augusta-Richmond County Coliseum Auth.*, 203 Ga. App. at 239.

4. Johnson claims, however, that summary judgment is precluded under the "necessity rule." That rule precludes summary judgment against a landlord where the tenant had no alternative but to traverse a known hazard in order to enter or leave his home. *McCullough v. Briarcliff Summit, L.P. II*, 237 Ga. App. 630, 632 (2) (516 SE2d 353) (1999); *Hart v. Brasstown View Estates*, 234 Ga. App. 389, 391 (506 SE2d 896) (1998). But the rule does not apply under the facts of this case. Johnson had other alternatives. If Johnson wanted to sit outside talking to his friend, AHA provided a fenced courtyard on the side of Roosevelt House that was intended for residents to use as a more secure outside environment. Moreover, Johnson may have had to use the front door of Roosevelt House to come and go, but he was not required to linger in front of the building at a time and place he knew to be dangerous.

*Judgment affirmed. Smith and Miller, JJ., concur.*

DECIDED MARCH 27, 2000.

*Gill, Peterson & Harris, Allen F. Harris, Slappey & Sadd, James N. Sadd,* for appellant.

*Gleaton, Persons, Eagan & Jones, W. Seaborn Jones, Elizabeth Knight, Roger K. Whitesides,* for appellee.