A04A1784. DOLPHIN REALTY v. HEADLEY.
(610 SE2d 99)

Andrews, Presiding Judge.

Pursuant to our grant of its interlocutory application for appeal, Dolphin Realty d/b/a Riverside House Apartments (Riverside), appeals from the trial court's denial in part of its motion for summary judgment and the trial court's deferral of a ruling on part of the motion on Denise Headley's premises liability claim.

In reviewing the grant or denial of summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996). A defendant may prevail on summary judgment by "showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So viewed, the undisputed evidence was that Headley rented an apartment at Riverside in August 1997. Riverside is a residential complex of 220 units located approximately a mile north of I-285 in metro Atlanta. Headley's apartment was located on the ground floor, directly across the parking lot from the laundromat of the complex. Headley felt "safe on the ground floor" because she "never heard" of any crime on the property. Betty Head, the resident manager of Riverside for ten years, was also unaware of any serious crimes on the property prior to the incidents involving Headley.

On Friday evening, February 9, 2001, Headley went back and forth to the laundromat while doing her laundry. As was her habit, she left her front door unlocked because the laundromat was so close. During her first several trips, she noticed nothing out of the ordinary. Upon her return to her apartment with a load of clothes, Headley walked into her bedroom and was attacked by an unidentified man. The man put a sharp object to her neck and held his hand over her mouth. During the assault, the man told Headley he would give her some advice — "not to go out after dark and not to do laundry after dark." Then he said, "you didn't see me in the dark; did you?" After

subduing Headley, the man forced her to remove her clothes and perform oral sodomy on him. Following the sexual assault, the man left her on the bed, blindfolded, with her ankles and hands tied. The man then removed numerous items from Headley's apartment, including a television, stereo, alcohol, and money from her purse. Headley freed herself after the man left and the police were called.

Headley also reported the assault to resident manager Head, who was "horrified" and "shocked" because this was the first time a resident had been attacked and sexually assaulted on the property.

The day following the assault, Headley prepared and circulated a flyer to residents of the complex, telling them about the incident and asking for any information they might have about the assailant. After reporting the incident to William Keappler, her superior, Head also drafted a Crime Awareness Letter and distributed it to residents on February 12. In that letter, she advised of the attack, including a description of the attacker, and warned residents to be as "cautious as possible with respect to your property and surroundings." It advised not walking alone around the complex at night, locking the door upon leaving the apartment, and immediately contacting law enforcement upon the occurrence of any incident. Finally, it stated that "[a]s you realize, no one can guarantee your safety. We remind you that your security is the responsibility of the local law enforcement and yourself. We believe that by taking an active role in your own security you can help avoid any unnecessary problems." Keappler directed Head to have maintenance make sure that all outside lights on the property were working and to check and see if any trees needed to be cut back or pruned. At least one tree near a light was trimmed back.

No one on behalf of Dolphin Realty had ever conducted a general survey of crimes for the area where Riverside was located, nor was a lighting survey ever conducted of the apartment complex. There were no formal security manuals or policies in place for the complex and no security officer.

Headley decided to remain at Riverside following this assault because she "felt like it was still a good location" and "wasn't a bad crime area otherwise." Following this assault, Headley stopped doing laundry after dark for a period of time. At some point prior to December, however, she began doing laundry after dark again.

On the evening of December 3, 2001, Headley was doing her laundry after dark. As she returned to her apartment from the laundromat, she heard running footsteps coming down the breezeway as she was closing her front door, which she had locked before going to the laundromat. The same man who had assaulted her in February pushed his way into the apartment and held a sharp object

to her neck.[1] Headley recognized the man because he had on the same exact outfit he wore in February, including the tennis shoes. There was no sexual assault, but the man took a television and VCR.

Headley moved from Riverside shortly after this attack, stating at the time that she did not believe the police had been very active in helping her.

Headley claimed that Riverside was negligent in failing to protect her from two attacks by the same assailant based on Riverside's "superior knowledge of the dangerous and defective condition of [the] premises because of prior, substantially similar incidents," because of which Riverside "had reason to anticipate a criminal act would occur on its premises."

Riverside sought summary judgment based on the absence of any legal duty to protect Headley from third-party criminal conduct. Regarding the first attack, the trial court determined, without citing any authority, that police reports and computer printouts indicating property crimes at Riverside's premises provided a sufficient basis upon which to defer ruling on any duty on Riverside regarding the first attack. Regarding the second attack, the trial court denied the motion based upon Riverside's knowledge of the first attack.

1. Dolphin Realty argues, and we agree, that on the record before us, it was entitled to summary judgment regarding the lack of duty owed to Headley prior to the February 2001 assault.

> A landlord's duty to its tenants arises under OCGA § 51-3-1. In Georgia that duty extends to protecting tenants from third-party criminal acts under certain circumstances. *Doe v. Prudential-Bache &c. Realty Partners, L.P.*, 268 Ga. 604 (492 SE2d 865) (1997); *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997). While the general rule is that a landlord is not an insurer of his tenant's safety, the landlord does have a duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon tenants. The duty to guard against crime generally arises when, due to prior experience with substantially similar types of crime, the landlord has reason to anticipate criminal acts. A tenant will be precluded from recovery, even where such prior acts are known to the landlord, however, as a matter of law, when he or she has equal or superior knowledge of the risk and fails to exercise ordinary care for his or her own safety. *Johnson v. Atlanta Housing Auth.*, 243 Ga. App. 157 (532 SE2d 701) (2000); *Jackson v. Post Properties*, 236 Ga.

---

[1] No one has been arrested for these assaults.

App. 701-702 (513 SE2d 259) (1999).

*Habersham Venture v. Breedlove*, 244 Ga. App. 407, 409-410 (1) (535 SE2d 788) (2000).

Here, the only record of previous property crimes in the area was a computer printout used by Headley's expert showing dates and addresses of various area crimes and numerous copies of crime reports in the area. Pretermitting the issue of the lack of showing of the required similarities, no showing was made of any knowledge on behalf of Dolphin Realty of these crime statistics. In fact, Head and Keappler both affirmatively stated that no such search of crime statistics had been made.

It has repeatedly been held that "[t]here is no authority in this State imposing a duty upon a property owner to investigate police files to determine whether criminal activities have occurred on its premises." *Sun Trust Banks v. Killebrew*, 266 Ga. 109 (464 SE2d 207) (1995). See also *Johnson v. Atlanta Housing Auth.*, supra at 159 (1).

Therefore, exercising our de novo review, we conclude that Dolphin Realty was entitled to summary judgment regarding the February 2001 assault because Headley failed to come forward and demonstrate knowledge of prior similar crimes that would have put Dolphin Realty on notice and imposed a duty. *Johnson v. Atlanta Housing Auth.*, supra; see *Spear v. Calhoun*, 261 Ga. App. 835, 837-838 (1) (584 SE2d 71) (2003).

2. Regarding the December 2001 assault, we agree with Dolphin Realty that it had no knowledge superior to that of Headley of any danger, pretermitting the issue whether the first incident was sufficient to impose a duty upon Dolphin Realty.

As discussed above, a tenant is precluded from recovery when, as here, she has equal or superior knowledge of the risk and fails to exercise ordinary care for her own safety. E.g., *Habersham Venture*, supra.

Here, after being told by the assailant not to continue to do laundry after dark, Headley proceeded to do just that, knowing her belief, as alleged here, that the lighting was insufficient and foliage interfered with some lighting.

Therefore, Dolphin Realty was entitled to summary judgment on this basis. E.g., *Rice v. Six Flags &c.*, 257 Ga. App. 864, 868 (572 SE2d 322) (2002); *Johnson v. Atlanta Housing Auth.*, supra.

Additionally, there was sufficient evidence that the claimed inadequacy of the lighting was the cause in fact of the assailant's ability to gain access to her apartment. For instance, there is no indication that the assailant was not a resident of the complex with equal access to all common areas, regardless of lighting. Therefore, Dolphin Realty was also entitled to summary judgment on this basis.

*Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 894 (1) (595 SE2d 517) (2004); *Niles v. Bd. of Regents &c. of Ga.*, 222 Ga. App. 59, 61 (2) (473 SE2d 173) (1996); see also *Fallon v. Metro. Life Ins. Co.*, 238 Ga. App. 156, 158 (2) (518 SE2d 170) (1999) (physical precedent only); *Post Properties v. Doe*, 230 Ga. App. 34, 37 (495 SE2d 573) (1997) (physical precedent only).

*Judgment reversed. Ellington, J., concurs. Miller, J., concurs in the judgment only.*

DECIDED JANUARY 21, 2005 —
RECONSIDERATION DENIED FEBRUARY 2, 2005 —

*Freeman, Mathis & Gary, Philip W. Savrin, Sun S. Choy*, for appellant.

*Lane & Lane, Charles W. Lane*, for appellee.