A06A2112. WOJCIK et al. v. WINDMILL LAKE APARTMENTS, INC. et al.
(645 SE2d 1)

ANDREWS, Presiding Judge.

Mary Wojcik, individually and as representative of her husband's estate, appeals from the trial court's grant of summary judgment to Windmill Lake Apartments, Inc., which operated the apartment complex where Wojcik was murdered by a nonresident while delivering pizza.

The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be

construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

So viewing the evidence here, it showed that Windmill Lake Apartments, Inc. (the Owner) acquired the Windmill Lake apartment complex, located at 347 Pat Mell Road in Marietta, in January 1995. Roger Bernot is the chief executive officer of the corporation. When the complex was acquired, Bernot and others with the company were aware that there had been isolated criminal activity, such as vehicle break-ins, and suspicious activity, such as high traffic to some apartments, at the complex prior to and during the acquisition process. Because of this, precautions were taken to protect residents, including payment for monitored alarms in the apartments and floodlights in common areas. Any resident who requested a dead-bolt lock was provided with one. Cobb County police were requested to make more frequent patrols of the area and the complex allowed police officers to live there in exchange for the officer's being the first point of contact for problems, although no officer was living there when Mr. Wojcik was killed. Also, residents were offered a monetary award to report any crime on the property, but the reward was never claimed. Background checks were initiated for prospective residents.

In October 2002, Apartment 2133-1, in which Mr. Wojcik was shot on October 16, 2002, was vacant and in the process of being prepared for a new tenant. Approximately three to four days prior to the murder, Mark Shepard, a maintenance employee, and his supervisor, George Fennell, delivered a new dishwasher to that apartment for future installation. Upon leaving, as was standard procedure with vacant apartments, Shepard and Fennell checked all the windows and doors to ensure they were locked, made sure the "Charlie bar" was in place on the back door, and locked the front door on the way out.

On October 16, 2002, Cortez Carter was visiting a resident of the complex. As a visitor of a resident, management of the complex had no authority to ask or demand that he leave. Carter asked to use a telephone and was loaned the occupant's cell phone. The occupant returned to his girlfriend and Carter placed a call to the Pizza Hut and ordered a pizza to be delivered to Apartment 2133-1. Carter somehow obtained access to the apartment and, when Wojcik delivered the pizza, he was robbed and strangled. When Cobb County Police Sergeant Szeniawski arrived on the scene to investigate, he found the back door locked, with the Charlie bar in place. There were no obvious signs of break-in around the front door or any windows.

Mrs. Wojcik's enumerations of error are that the trial court erred in granting the Owner's motion for summary judgment; in ruling there was no evidence that the Owner and manager were negligent in leaving the apartment unlocked where the murder occurred; and in failing to consider printouts of reported crimes in the complex. They are considered and addressed together.

> The general rule regarding premises liability is that a landlord does not insure tenants' safety against third-party criminal attacks, and that any liability from such attacks must be predicated on a breach of duty to "exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. A landlord's duty to exercise ordinary care to protect tenants against third-party criminal attacks extends *only* to *foreseeable* criminal acts. See *Days Inns of America v. Matt*, 265 Ga. 235, 236 (454 SE2d 507) (1995). The difficulty arises in determining which criminal acts are foreseeable.

(Emphasis in original.) *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 785-786 (482 SE2d 339) (1997).

Further,

> [a] proprietor's duty to invitees is to "exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. The proprietor is not the insurer of the invitee's safety, *Pound v. Augusta Nat.*, 158 Ga. App. 166 (279 SE2d 342) (1981), but is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has superior knowledge. *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391 (394 SE2d 345) (1990). If the proprietor has reason to anticipate a criminal act, he or she then has a "duty to exercise ordinary care to guard against injury from dangerous characters." *Atlantic C. L. R. Co. v. Godard*, 211 Ga. 373, 377 (86 SE2d 311) (1955).

*Lau's Corp. v. Haskins*, supra, 261 Ga. at 492.

Thus the incident causing injury to the plaintiff

> must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity. . . . *Sturbridge Partners*, supra at 786.

(Punctuation and emphasis omitted.) *Walker v. St. Paul Apts.*, 227 Ga. App. 298, 300 (489 SE2d 317) (1997). "Knowledge of a dangerous condition giving rise to the incident is necessary in order to show the existence of even an initial duty to provide preventive security measures for this type of attack. *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874, 877 (392 SE2d 535) (1990)." *Ritz Carlton Hotel Co. v. Revel*, 216 Ga. App. 300, 303 (2) (454 SE2d 183) (1995).

Carron, the general manager of the complex, acknowledged that she had made numerous calls to the Cobb County Police to report what she suspected to be prostitution or drug activity in the complex. Additionally, Wojcik submitted, in opposition to the Owner's motion for summary judgment, copies of 911 call reports from Cobb County Police which she contends show over 400 calls made from the complex regarding numerous crimes, although no murders. It is undisputed that no murders had occurred at the complex prior to that of Mr. Wojcik.

"The admissibility of evidence on motion for summary judgment . . . is subject to the rules relating to the admissibility of evidence generally, so that evidence inadmissible on a hearing of the case would generally be inadmissible on motion for summary judgment." (Citations and punctuation omitted.) *Lance v. Elliott*, 202 Ga. App. 164, 167 (413 SE2d 486) (1991). As these documents are not certified or authenticated, they cannot be considered in our de novo evaluation of whether summary judgment was warranted and were properly disregarded by the trial court. See *Ford v. Ga. Power Co.*, 151 Ga. App. 748, 749 (2) (C) (261 SE2d 474) (1979). Thus, this evidence could not be used to support the claim that this attack on Wojcik was foreseeable.

Further,

> [i]t has repeatedly been held that "[t]here is no authority in this State imposing a duty upon a property owner to investigate police files to determine whether criminal activities have occurred on its premises." *Sun Trust Banks v. Killebrew*, 266 Ga. 109 (464 SE2d 207) (1995). See also *Johnson v. Atlanta Housing Auth.*, [243 Ga. App. 157,] 159 (1) [(532 SE2d 701) (2000)].

*Dolphin Realty v. Headley*, 271 Ga. App. 479, 482 (1) (610 SE2d 99) (2005).

Therefore, we agree that the trial court properly concluded that there was an absence of evidence to show that the defendants had knowledge of any substantially similar incident or incidents within a period of time relevant to the incident in this case that would allow a jury to find that defendants should have reasonably anticipated the

occurrence of the murder and, therefore, the evidence failed to create a factual issue as to foreseeability. *Baker v. Simon Property Group*, 273 Ga. App. 406, 408 (1) (614 SE2d 793) (2005); *Agnes Scott College v. Clark*, 273 Ga. App. 619, 621 (1) (616 SE2d 468) (2005).

Further, as noted by the trial court, plaintiff's argument that the fact that no evidence of break-in was found in the apartment mandates the inference that the apartment was left unlocked by one of the Owner's employees, thereby allowing the perpetrator's entrance, is negated by the unequivocal evidence from Fennell and Shepard that when they left the apartment three days prior to the murder, it was securely locked.

> " 'In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists. When uncontradicted and unimpeached evidence is produced as to the real facts, the inference disappears, and does not create a conflict in the evidence so as to require its submission to a jury.' [Cit.]" [Cits.]

*Taylor & Mathis, Inc. v. Doyle*, 219 Ga. App. 445, 446 (1) (465 SE2d 484) (1995). See also *Blue Cross &c. of Ga. v. Kell*, 227 Ga. App. 266, 271 (3) (488 SE2d 735) (1997).

Further, the argument that, because there were five master keys held by Bernot and others, this would allow the jury to infer that one of the five must have gone into the apartment after Shepard and Fennell and left it unlocked is unavailing.

> Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment. A plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.

(Citations and punctuation omitted.) *Tuggle v. Helms*, 231 Ga. App. 899, 902-903 (2) (499 SE2d 365) (1998). See also *McQuaig v. Tarrant*, 269 Ga. App. 236, 238 (603 SE2d 751) (2004).

*Judgment affirmed. Bernes, J., concurs. Barnes, C. J., concurs specially.*

BARNES, Chief Judge, concurring specially.

Although I concur that the incident resulting in the death of Mr. Wojcik was not foreseeable and was not the result of the defendants'

negligence, I cannot concur in all that is said in the majority opinion because the evidence does not establish that Mr. Wojcik's status was that of an invitee.

The majority applies the general rule regarding the duty owed by a landlord to protect tenants from attacks by third parties, but this was not an attack on a tenant. Mr. Wojcik was a pizza delivery man, who, apparently without the knowledge of the tenant, was lured to the vacant apartment by a guest of a tenant as part of the murderer's scheme to rob Mr. Wojcik. The evidence does not show that the tenant expected to receive any benefit from Mr. Wojcik's visit to the premises. Under this evidence, it is most unlikely that Mr. Wojcik would qualify as an invitee.

> If the *primary* purpose of the visit is of mutual benefit to the tenant and guest, the legal status of the visitor is that of an invitee. *Chatham v. Larkins*, [134 Ga. App. 856, 857 (216 SE2d 677) (1975)]. However, a landlord is liable to one injured while visiting a tenant for his (the visitor's) own personal advantage only for wilful or wanton injury to the visitor, a licensee. *Jones v. Asa G. Candler, Inc.*, 22 Ga. App. 717, 720 (97 SE 112) (1918); *Strickland v. ITT Rayonier*, 162 Ga. App. 317 (291 SE2d 396) (1982).

*Brown v. Clay*, 166 Ga. App. 694 (305 SE2d 367) (1983). Further, guests of tenants, "those coming on the leased premises for business purposes beneficial to the tenant, and those doing business with him are there by his invitation and stand in his shoes insofar as they suffer injury due to the negligence of the owner or occupier of the premises." *Davis v. Garden Svcs.*, 155 Ga. App. 34, 35 (1) (270 SE2d 228) (1980).

Nevertheless, as no evidence shows that, regardless of his status, Mr. Wojcik's death was foreseeable or was the result of Windmill Lake Apartments' negligence, the trial court did not err by granting the motion for summary judgment.

DECIDED MARCH 9, 2007 —
RECONSIDERATION DENIED APRIL 4, 2007 — ▮

*Ralph E. Hughes*, for appellants.
*Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Thomas J. Mihill, Moore, Ingram, Johnson & Steele, Robert D. Ingram*, for appellees.