A02A1468. THOMAS v. FOOD LION, LLC et al.
(570 SE2d 18)

JOHNSON, Presiding Judge.

Corine Thomas, as mother and administrator of the estate of Henry Tanksley, sued Food Lion and its assistant manager, Chad Reid, for a fatal shooting that occurred miles away from the grocery store. The trial court granted summary judgment to Food Lion and Reid. Thomas now appeals, alleging the trial court erred in failing to find that Food Lion and Reid had an affirmative duty to notify Tanksley that someone might cause him harm, and that the trial court erred in failing to find that the unauthorized disclosure of Tanksley's image was a violation of his right to privacy. Because these enumerations of error lack merit, we affirm the trial court's grant of summary judgment to Food Lion and Reid.

The evidence in the record shows that on September 8, 1998, between 1:30 p.m. and 1:45 p.m., Gina Warren went to Food Lion on Windsor Springs Road to do her weekly food shopping. While reach-

---

ing for a can on one of the merchandise shelves, Warren felt someone grabbing between her legs. The man who grabbed her "smelled really like he'd been drinking a lot, and his eyes were bloodshot red." He was the same man who spoke to her at the end of the aisle earlier. Warren reported the incident to an employee, who in turn called management.

Assistant manager Reid was called to the front of the store, where he found Warren crying. Warren told Reid she had just been assaulted in the store. Reid asked her if he should call the police, and Warren said yes. Reid then took Warren to a room in the back and played the surveillance video from the camera mounted over the front door. Warren identified a man wearing a white t-shirt and camouflage pants as the person who committed the assault. However, she did not know the man's name. When the police arrived, Reid showed the tape to the police with Warren present. Warren again identified the man who grabbed her between the legs, but still did not know the man's name. The police then escorted Warren to her car, and Warren and the police left the store.

When Warren arrived home, she told her husband what had happened. Her husband went to the Food Lion to view the videotape, but Reid was not there. The husband returned home, spoke with his wife for a few minutes, and then walked to his brother's house. He asked his brother to go to the Food Lion with him and try to help identify the man on the videotape. Subsequently, Warren's husband and his brother went back to the Food Lion and asked Reid if they could view the videotape. According to Reid, the two men appeared calm and did not appear angry. From the videotape, Reid showed the men what was essentially a still shot of the man who had assaulted Warren. The record shows that the brothers thought they knew the man. However, the record is devoid of any evidence showing that the brothers told Reid the identity of the man, gave Reid the man's address, or informed Reid that they were going to find the man. The husband thanked Reid, and he and his brother left the store. According to Reid, he had absolutely no reason to believe that any violence would occur.

After leaving the Food Lion, Warren's husband and his brother went to Tanksley's mother's house "to make a positive ID and to give him the benefit of the doubt. If it was him that maybe we can talk this out and be over with it." When they arrived at Tanksley's mother's house, Tanksley was sitting next to the trailer. He had on a white t-shirt and camouflage pants. Warren's husband told Tanksley that he knew about the assault on his wife and that he was calling the police on his cell phone. Tanksley moved toward Warren's husband and tried to hit him with a tire iron. Robbie Warren, the brother, grabbed a shovel and deflected the tire iron, knocking him-

self to the ground. When Tanksley again tried to hit Warren's husband with the tire iron, Warren's husband shot Tanksley. According to Robbie Warren, Tanksley "was the aggressor. He came toward us. We did not show him any threat whatsoever. We just wanted to talk to him. We had a 20-year relationship; we figured we can talk this thing out. But Mr. Tanksley was not in his right mind that day." In this case, Thomas seeks to hold Food Lion and Reid liable for the shooting death of Tanksley.

1. In her first enumeration of error, Thomas alleges the trial court failed to find an affirmative duty on the part of Food Lion and Reid to notify Tanksley that Warren's husband and his brother might cause Tanksley harm. We find that no such duty existed under the present circumstances.

A duty may arise from statute or contract.[1] Here, no duty existed between Food Lion, Reid, and Tanksley at the time of the alleged tort. Generally, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others.[2] Moreover, as clearly established by Reid, he had no indication that any violence or harm was going to occur, and he had no knowledge that Tanksley was being placed in any danger. In fact, he did not even know that Tanksley was the individual on the videotape.

Furthermore, even if a duty did exist under Georgia law, and even if that duty was breached, we find that such a breach did not constitute the legal and proximate cause of Tanksley's death. Negligence is not actionable unless it is the proximate cause of the injury. And it is well established that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience.[3] "The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again. The possible consequences are those which happen so infrequently that they are not expected to happen again."[4] Thus, negligence is predicated on what should have been anticipated rather than on what happened.

Moreover, generally, an independent, intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury superseding any negligence of the defendant, unless the intervening criminal act is a rea-

---

[1] OCGA § 51-1-8.

[2] *Shortnacy v. North Atlanta Internal Medicine*, 252 Ga. App. 321, 325 (2) (556 SE2d 209) (2001).

[3] *Morris v. Baxter*, 225 Ga. App. 186, 187 (483 SE2d 650) (1997).

[4] (Citations and punctuation omitted.) Id.

sonably foreseeable consequence of the defendant's negligent act.[5] Although the question of proximate cause is ordinarily for the jury to decide, plain and indisputable cases may be decided by the court as a matter of law. In such plain cases, the inquiry is whether the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery.[6]

Here, we find that the trial court correctly granted summary judgment to Food Lion and Reid. No jury could reasonably conclude that Reid's act of showing Warren's husband and his brother the still picture proximately caused Tanksley's death. Reid testified by deposition that Warren's husband and his brother appeared calm and that he had no reason to believe they would harm the individual on the videotape. In fact, the record is devoid of any evidence that Reid even knew Tanksley was the individual on the videotape. So, Reid could not possibly have warned Tanksley of any potential harm. Reid was doing nothing more than aiding in the identification of someone who had just committed a crime in his grocery store. Furthermore, the record is devoid of any evidence that Warren's husband and his brother went to Tanksley's mother's house to harm Tanksley.

2. Thomas contends the trial court erred in failing to find that the unauthorized disclosure of Tanksley's image was a violation of his right to privacy. We disagree.

An invasion of privacy claim must fall within one of the following four categories: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs, (2) public disclosure of embarrassing facts about the plaintiff, (3) publicity which places the plaintiff in a false light in the public eye, or (4) appropriation of the plaintiff's name or likeness for the defendant's advantage.[7] Thomas' claim for invasion of privacy is based on Food Lion's alleged appropriation of Tanksley's likeness for Food Lion's benefit. Thomas' sole argument in this regard is as follows:

> While publishing the image to the police was couched in the altruistic purpose of aiding law enforcement, there was no such motive in displaying the image to the husband of the wife who claimed that her assailant was identifiable by the image. A reasonable jury could conclude that the motivation for such a publication of the image was to cater to the base instinct of revenge by store patrons.

---

[5] *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 67 (2) (d) (397 SE2d 576) (1990).
[6] Id.
[7] *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 704-705 (1) (409 SE2d 835) (1991).

However, the record is devoid of any evidence that Food Lion or Reid benefitted from the use of Tanksley's image.

An essential element of the "appropriation for one's advantage" category of breach of privacy is that the wrongdoer appropriate the plaintiff's likeness to the wrongdoer's advantage.[8] There must be an appropriation for the defendant's benefit, advantage, or use for commercial exploitation.[9] Here, the undisputed evidence discloses that no wrongful appropriation occurred since Food Lion and Reid received nothing of value for Tanksley's likeness. Reid displayed a portion of the store's security tape to the police and to Warren's family solely to aid in the identification of the alleged perpetrator. There is no evidence that Food Lion or Reid was paid any money or received any benefit or advantage by displaying the videotape to the Warren family. Furthermore, Warren's husband and his brother were not even positive as to whose likeness was depicted on the videotape. The trial court correctly granted summary judgment to Food Lion and Reid on Thomas' tortious invasion of privacy claim.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED JULY 26, 2002 —
RECONSIDERATION DENIED AUGUST 7, 2002 ▮

*John M. Brown*, for appellant.
*McLain & Merritt, Howard M. Lessinger*, for appellees.

---

[8] See *Jarrett v. Butts*, 190 Ga. App. 703, 705 (2) (379 SE2d 583) (1989).
[9] *Williams v. Church's Fried Chicken*, 158 Ga. App. 26, 32 (5) (279 SE2d 465) (1981).