A03A2506. GWINNETT HEALTH SYSTEM, INC. et al. v. DELU.
(592 SE2d 497)

BLACKBURN, Presiding Judge.

Gwinnett Health System, Inc., Gwinnett Hospital System, Inc., and Joan Bright (the "Hospital") appeal the denial of their motion for summary judgment on the claims brought against them by Lolade Delu, in her own right and on behalf of her children (the "Delus"), in this case regarding the care and placement of infant children while their mother received therapy for severe and incapacitating postpartum depression. The Hospital contends that the trial court erred because: (1) there is no evidence supporting the Delus' claims for kidnapping, interference with custody, and false imprisonment; and (2) the Delus have not satisfied their burden of proving their claims for intentional infliction of emotional distress and for punitive damages. Based on the uncontradicted facts of this case, we agree and reverse.

The salient facts of this case are simple, straightforward, and uncontradicted. Suffering from overwhelming postpartum depression, Delu requested that the Hospital treat her for her illness and insure that her children, for whose care she had made no provision, were properly supervised. Left with two infants whose mother would be incapacitated for an unknown period of time, the Hospital reasonably asked the Gwinnett County Department of Family and Children Services (DFACS) to take custody of the babies during their mother's convalescence. Delu now attempts to impose punishment on this otherwise good deed.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations omitted.) *Lau's Corp. v. Haskins.*[1]

Viewed in this light, the record shows that, after giving birth to twins at Gwinnett Medical Center five days earlier, Lolade Delu called the Hospital April 22, 1998, to complain of pain and severe postpartum difficulties. The Hospital sent an ambulance to pick up Delu, who had no other means of transportation, and a second ambulance was sent to bring her infant twins to the Hospital because Delu had not made arrangements for their care.[2]

At the hospital, Delu left the twins with Bright, from the social services department of Gwinnett Medical Center, who promised Delu that she would see that they were taken care of while Delu was in the hospital. Following their conversation, Bright, thinking that Delu would be discharged later in the day, made arrangements for a hospi-

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] When the ambulance arrived, Delu, who also had made no arrangements for friends or family members to take care of her children, told the paramedics that she wanted to bring the twins with her in the ambulance, but the paramedics told her that they could not transport the infants because the ambulance was not equipped to transport them. Delu called Joan Bright, at the hospital, for help and explained that she had no resources for child care. Bright spoke with the paramedics and begged them to bring the infant children, but the paramedics refused. As a result, Bright arranged for a second ambulance to transport the children; Delu and her children were transported in two ambulances to Gwinnett Medical Center.

tal volunteer to take care of the children while Delu was seeing the doctor. Delu, however, was admitted to the hospital on the same day for treatment of postpartum difficulties. Because Delu's children were in need of care, the duration of Delu's hospitalization was uncertain, and Delu had made no arrangements for extended care of her babies, Bright contacted DFACS, and DFACS employees came to the hospital and took custody of the children.

On April 23, 1998, a hearing was held before a juvenile court judge at which a DFACS caseworker, an attorney for DFACS, and a guardian ad litem were present. The juvenile court issued an emergency order in which it found "probable cause that [Delu's] children are deprived due to the fact that the Mother has been hospitalized in Gwinnett Medical Center with severe depression and there are no other relatives or family members to care for the children." The court also found "that reasonable efforts have been made to eliminate the need for removal of the children from the home and that said efforts have been unsuccessful." As a result, the juvenile court placed the children in the temporary custody of DFACS. Delu has never challenged the juvenile court's order.

April 23, 1998, was also the day Delu learned that her children were in DFACS custody. Despite her assertion in her action against the Hospital that she had family members available who could have taken care of the children during her hospitalization had she been informed that the children were going to be turned over to DFACS, Delu testified that she made no effort to contact either family members or friends to care for the children.

On April 24, 1998, Delu asked to see her children and they were brought to her. After demanding the return of physical custody of the children, Delu became extremely upset when informed that the children could not be returned to her absent further court order. Her behavior led one of her treating physicians to conclude that she needed a psychiatric evaluation. The physician completed a 1013 certificate on which he indicated the following conditions were present:

> This individual appears to be mentally ill. My opinion is based on the following observations: extremely paranoid, agitated, bizarre behaviour. Presents an imminently life-endangering crisis to self because . . . she is so unable to care for . . . her own health and safety. For example: 6 days post partum, very disorganized behaviour, unstable mood.

Pursuant to the 1013 certificate, Delu was transferred to the DeKalb County Medical Center Psychiatric Unit for evaluation.

On April 28, 1998, Delu was released from DeKalb County Medi-

cal Center and returned home. Pursuant to an order of the juvenile court, DFACS returned the children to Delu on May 1, 1998.

On January 26, 2000, Delu, individually and as next friend of her children, filed suit in state court against the Georgia Department of Human Resources ("DHR"), the Division of Family and Children Services, DFACS, various other DFACS employees, and the Hospital, alleging kidnapping, interference with custody, false imprisonment, intentional infliction of emotional distress, punitive damages, and violation of civil rights. The case was removed to the United States District Court for the Northern District of Georgia. The district court dismissed the federal claims and remanded the state claims back to the state court.

The Gwinnett County defendants filed a motion for summary judgment as to all remaining claims, which included kidnapping, interference with custody, false imprisonment, intentional infliction of emotional distress, and punitive damages. At a hearing on the motion for summary judgment, the Delus stated that they were not asserting a claim of false imprisonment of Delu but only a claim for false imprisonment of the twins. Additionally, the Delus clarified that, with regard to the claims of kidnapping, interference with custody, and false imprisonment, they were seeking damages only for the tortious conduct which occurred on April 22, 1998, and not for conduct occurring between April 23, 1998, and May 1, 1998. The state court found that the Delus were not entitled to pursue their claims against DHR, the Division of Family and Children Services, and DFACS, leaving the Hospital as the sole defendant. The trial court also denied the Hospital's motion for summary judgment. This appeal followed.

1. The Hospital contends that the trial court erred in failing to grant it summary judgment on the Delus' claims for kidnapping,[3] interference with custody,[4] and false imprisonment,[5] arguing that the Delus have failed to state viable claims thereunder. We agree.

First, it is clear that the Hospital did not commit the offense of kidnapping. OCGA § 16-5-40 provides that "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." Bright, after learning that Delu had no resources for caring for her children while she was in the hospital, contacted DFACS. Under the facts of this case, this was the only course of action open to her. Delu's children were without care, and provision for their care

---

[3] OCGA § 16-5-40.
[4] OCGA § 16-5-45.
[5] OCGA § 16-5-41 (a).

had to be made. Contacting DFACS to see that the children were cared for is not actionable.

Moreover, after Bright reported the children's situation to DFACS, it was DFACS, not the Hospital, which took the children into custody. DFACS, not the Hospital, had lawful custody of the children pursuant to the order of the juvenile court and lawfully retained custody of the children until it returned custody to Delu pursuant to a subsequent order of the juvenile court. Though not at issue in this case, the propriety of DFACS's action in assuming custody of the twins was established by the order of the juvenile court, which found that there was probable cause that the children were deprived due to the fact that Delu had been hospitalized in Gwinnett Medical Center with severe depression and there were no other relatives or family members to care for the children. There is nothing in the record which indicates that Delu ever appealed the juvenile court's finding of deprivation, and thus the juvenile court's finding is binding on appeal. *In the Interest of B. P.*[6] (unappealed decision in deprivation hearing is binding on appeal). In sum, the Delus have presented no evidence that the defendants in the underlying case committed any acts which would make them liable for kidnapping.

It is equally clear that the Hospital did not interfere with the custody of the children. OCGA § 16-5-45 (b) (1) (A) provides that "[a] person commits the offense of interference with custody when without lawful authority to do so the person . . . [k]nowingly or recklessly takes or entices any child or committed person away from the individual who has lawful custody of such child or committed person." The Hospital did not take the children away from Delu. DFACS took custody of the children with lawful authority. The children remained in the custody of DFACS until custody was lawfully returned to Delu by court order. As with the claims of kidnapping, the Delus have failed to present any evidence that creates an issue of fact as to whether the Hospital interfered with the custody of the children.

We also agree with the Hospital that there is no evidence supporting the Delus' claim of false imprisonment. As noted above, the Delus did not claim that Delu was falsely imprisoned by the Hospital; instead, the Delus claim that the Hospital falsely imprisoned Delu's children by contacting DFACS on April 22, 1998.

The essential elements of the crime of false imprisonment are: violating the personal liberty of another, by arresting, confining, or detaining a person without legal authority. OCGA § 16-5-41 (a). As noted above, Delu, upon admission to the hospital, delivered her children to Bright, who had promised to see to their care. Thus, it cannot

---

[6] *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993).

be said that Bright falsely imprisoned the children by accepting the children from Delu. Nor can it be maintained that the Hospital violated the personal liberty of Delu's children by contacting DFACS and informing it of the fact that the children were without care. These facts do not establish a claim for false imprisonment against the defendants in this case. Again, it was DFACS that took custody of the children. DFACS did so pursuant to an order of the juvenile court, and it retained custody of the children until an order of the juvenile court restored custody of the children to Delu.

As with the claims of kidnapping and interference with custody, the Delus fail to come forward with evidence sufficient to support their claim of false imprisonment. Accordingly, the trial court erred in failing to grant summary judgment to the Hospital on these claims.

2. The Delus also fail to satisfy the strict evidentiary standard which must be met in order to establish a claim of intentional infliction of emotional distress.

> The four elements which must be proved in order to sustain a claim of intentional infliction of emotional distress are: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. Moreover, it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Reece v. Chestatee State Bank.*[7]

The Delus have alleged certain actions on the part of the Hospi-

---

[7] *Reece v. Chestatee State Bank,* 260 Ga. App. 136, 141-142 (2) (579 SE2d 11) (2003).

tal in support of their claim for intentional infliction of emotional distress. However, we need not determine whether these actions amount to the extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress because the Delus have failed to include any citations to the record which support these allegations and thus create issues of fact. "This Court has repeatedly held that it is not the function of this Court to cull the record on behalf of a party. For this reason alone, [the Delus] have failed to satisfy [their] burden on appeal." (Citation omitted.) *Morgan v. State*.[8] The Hospital is entitled to summary judgment on this issue.

3. Since the Delus are unable to show that the Hospital is liable for any of the tortious actions alleged in their complaint, it follows that their claim for punitive damages cannot survive. See *Southern Gen. Ins. Co. v. Holt*[9] (holding that "[p]unitive damages may not be recovered where there is no entitlement to compensatory damages") (punctuation omitted).

*Judgment reversed. Ellington and Phipps, JJ., concur.*

DECIDED DECEMBER 18, 2003.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Carol P. Michel, Scott P. Kerew*, for appellants.

*King, Lipscomb & Lloyd, David S. Lipscomb, Sherriann H. Hicks*, for appellee.

---

[8] *Morgan v. State*, 263 Ga. App. 32, 34 (2) (587 SE2d 177) (2003).
[9] *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 270 (2) (416 SE2d 274) (1992).